## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**DOUGLAS GRIFFIN et al.,**

   **Plaintiffs,**

  **v.**          **1:10-cv-1926-WSD**

**NEW PRIME INC.**
**d/b/a PRIME, INC. et al.,**

   **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion to Exclude the

Testimony of Defendants' Purported Expert Donald Roberts [106] ("Motion to

Exclude Expert"), Plaintiffs' Motion *in Limine* [113], and Defendants' Motion *in*

*Limine* [112].

## I. BACKGROUND

This case arises from a fatal motor vehicle accident that occurred in August

2009 on Interstate 20 in Greene County, Georgia.  Plaintiffs are Douglas Griffin,

Barbara Griffin, Jessica Antico ("Antico"), Tami Deveroux ("Deveroux"), and

Mary Davis as the statutory representative and administratrix of the Estate of

Robert Neumann ("Neumann ") (collectively, "Plaintiffs").  Defendants are New

Prime, Inc. d/b/a Prime, Inc. ("Prime") and Mohamadou Hassan ("Hassan")

(collectively, "Defendants").

The accident at issue in this case occurred when a van, driven by Randall Bowman and in which Plaintiffs or their decedents were passengers, crashed into the rear of a tractor trailer, driven by Hassan for Prime. Plaintiffs allege that Hassan was negligent because he was traveling too slowly, below the interstate's posted minimum speed. Defendants dispute that Hassan was driving below the speed minimum and assert that Randall Bowman's negligence contributed to the accident.[1]

The trial of this matter is scheduled to begin on January 13, 2014. On June 12, 2013, Plaintiffs filed their Motion to Exclude Expert seeking to exclude certain opinions by Defendants' accident reconstruction expert Donald Roberts ("Roberts"). The opinions concern the speed of the truck driven by Hassan. On July 21, 2013, and July 22, 2013, the parties filed Motions *in Limine* seeking to exclude other evidence at trial. The motions are now before the Court.

---

[1] In their Complaint, Plaintiffs asserted additional claims against Hassan's passenger Edward Trotter and, against Prime, separate claims for punitive damages and for negligent hiring and retention. On January 29, 2013, the Court granted Defendants' motion for summary judgment on these claims. The only remaining claims in this action are for negligence against Hassan and vicarious liability against Prime.

## II.   PLAINTIFF'S MOTION TO EXCLUDE EXPERT

### A.   Legal Standard

The admissibility of expert opinions is governed by Rule 702 of the Federal

Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  The proponent of expert testimony must establish, by a

preponderance of the evidence, the factors set out in Rule 702.  United States v.

Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004).

The standard of admissibility under Rule 702 was discussed in the Supreme

Court's seminal decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509

U.S. 579 (1993).  Under Daubert,

> Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562–63 (11th Cir. 1998)

(footnote omitted) (citing Fed. R. Evid. 702; Daubert, 509 U.S. at 589).  Daubert

enumerated several factors which may be used in assessing expert testimony,

including (1) whether a theory or technique applied by the expert can be or has

been tested, (2) whether the theory has been subjected to peer review and

publication, (3) in the case of a particular scientific technique, the Court should

consider the known or potential rate of error, (4) and whether the theory or

technique has gained general acceptance in the relevant community.  509 U.S. at

593–94.  The Supreme Court emphasized that the Rule 702 inquiry is a flexible

one.  Id. at 594.

Daubert focused on the admissibility of scientific expert testimony.  In

Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court held

Daubert's methodology applies equally to experts who are not scientists.  The

Court held that a trial court may consider one or more of the specific factors

mentioned in Daubert in assessing non-scientific expert testimony, but that the trial

retains discretion to decide if non-scientific testimony is reliable and relevant to the

case.  Kumho Tire, 526 U.S. at 141.  The Court must

> make certain that an expert, whether basing testimony upon
> professional studies or personal experience, employs in the courtroom
> the same level of intellectual rigor that characterizes the practice of an
> expert in the relevant field . . . .  [T]he trial judge must have
> considerable leeway in deciding in a particular case how to go about
> determining whether particular expert testimony is reliable.  That is to

say, a trial court should consider the specific factors identified in
<u>Daubert</u> where they are reasonable measures of the reliability of
expert testimony.

<u>Id.</u> at 152.

      B.    <u>Analysis</u>

Plaintiffs seek to exclude Roberts's opinion that Hassan's truck was
traveling at approximately 55 miles per hour at the time of the collision.  Roberts's
opinion is based on three separate analyses: (1) the average speed of Hassan's trip;
(2) the change in velocity, or "delta v" data, shown in Bowman's van's event data
recorder ("EDR"); and (3) a distance and braking analysis.  Plaintiffs argue that
each of these analyses is flawed.

      1.    *Average Speed of Trip*

Roberts's first method to determine the truck's speed was to calculate the
average speed of Hassan's trip.  Roberts determined, from a GPS system, the
distance the truck traveled from its last refueling stop to the accident site, and then
divided this distance by the time taken to travel it.  Roberts determined that, in the
last leg of his trip, Hassan traveled 47.7 miles in either 55 minutes 7 seconds or 52
minutes 13 seconds, depending on how the exact collision time is determined.
Roberts thus calculated Hassan's average speed during the last leg of his trip as
either 51.9 or 55.0 miles per hour.  (<u>See</u> Roberts's Report [141-3] at 8, 18.)

5

In his deposition, Roberts conceded that his average speed calculation does not show Hassan's speed at any particular point, including at the time of the accident.  (See Pls.' Ex. A [129-1] at 17–19.)  Because the speed at the time of the accident is what is important, not the speed at other points, Plaintiffs argue that Roberts's opinion based on this "average" speed method should be excluded.  The Court agrees.  "[I]f an expert opinion does not have a 'valid scientific connection to the pertinent inquiry' it should be excluded because there is no 'fit.'"  Boca Raton Comty. Hosp., Inc. v. Tenet Health Care Corp., 582 F.3d 1227, 1232 (11th Cir. 2009) (citing Daubert, 509 U.S. at 591–92; McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004)).  The "pertinent inquiry" here is Hassan's speed at the time of the accident.  The "average speed" method does not inform this inquiry.  Roberts's opinion based on the "average speed" is excluded.

2.    *Speed Estimate Based on EDR "Delta v" Data*

Roberts next evaluated data from Bowman's van's EDR to calculate Hassan's speed at the time of the collision.  The EDR recorded, as 18.39 miles per hour, the van's change in velocity (the "delta v") over a 100-millisecond period during the collision.  Roberts subtracted this value from the undisputed 71 mile-per-hour pre-collision speed of the van.  This arithmetic function resulted in a calculated speed of the truck at the time of the collision of 53 miles per hour.

In his deposition, Roberts explained that, in collisions in which a vehicle crashes into a fixed object, the transfer of energy takes approximately 100 milliseconds. When a vehicle collides into a flexible object, the transfer of energy takes longer. Roberts testified that the collision in this case was most likely a collision with a flexible object because Bowman's van collided with Hassan's truck's flexible under-ride bar. The collision likely took between 100 and 200 milliseconds. Roberts conceded that the EDR recording, showing the "delta v" over only 100 milliseconds, does not show the total change in the van's velocity. He also stated that the "delta v" of the entire collision cannot be extrapolated from the known data—a "delta v" of 18.39 miles per hour over 100 milliseconds. Roberts's opinion based on the 100 milliseconds of EDR data does not show the total change in velocity of the van during the collision, which requires an evaluation of the "delta v" over the entire course of the collision. See Boca Raton, 582 F.3d at 1232. Roberts's testimony about this speed calculation methodology, however, and what it shows about the speed of the truck, even if the collision period was longer than the 100 milliseconds reported by the EDR, provides order of magnitude speed information about the truck's travel speed, that is sufficiently reliable and would be helpful to the jury. The precision of the calculation and how useful it may be to the jury can be explored on cross-examination.

3.    *Speed Estimate Based on Distance and Braking Analysis*

Roberts next performed a "distance and braking analysis" to determine the pre-collision speed of Hassan's truck.  Under this method, Roberts considered several variables, including the distance from the point of the collision to the truck's final stopping point, the deceleration rate of the truck, and Hassan's response time (i.e., the length of time from the point of the collision until Hassan began braking).  Applying these variables to a specific and generally accepted formula, Roberts calculated that the truck's speed was between 44 and 61 miles per hour.

Plaintiffs do not dispute the accuracy of the formula used by Roberts.[2] Plaintiffs object to the values Roberts used for two of the formula's variables, the deceleration rate and Hassan's response time, arguing they are not accurate and are not supported by the record.[3]  Roberts performed his calculations by assuming that the deceleration rate was between 0.2 and 0.3 g's because 0.2 is a "normal" braking speed and a braking speed over 0.3 would have been, but was not, recorded in the truck's data recorder.  Roberts assumed that Hassan's response

---

[2] The formula itself was not presented to the Court.

[3] Plaintiffs do not dispute that the distance from the point of the collision to the truck's final stopping point was 494 feet.

time was between 0.75 and 2 seconds, the average range for alert drivers.
Plaintiffs assert that the record does not contain evidence showing either that
Hassan's deceleration rate was greater than 0.2 g's or that Hassan's response time
was within the "average" range.

Plaintiffs' objections go to the weight of Roberts's "distance and braking
analysis" opinion, not the reliability of the "distance and braking analysis" method.
See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1345 (11th
Cir. 2003).  In Quiet Technology, the Eleventh Circuit explained that, where a
party disputes the data underlying an otherwise valid formula, a Daubert challenge
to the expert's opinion is not appropriate.  Id.  Instead, "[t]he identification of such
flaws in generally reliable scientific evidence is the role of cross-examination."  Id.
In this case, Roberts's opinion based on his "distance and braking analysis" is
admissible under Daubert, and the request to exclude it is denied.

## III.   MOTIONS *IN LIMINE*

### A.   Plaintiffs' Motion *in Limine*

In their Motion *in Limine*, Plaintiffs seek to preclude Defendants from
introducing twenty-one (21) categories of evidence or references by counsel.
Defendants consent to the exclusion of eleven (11) of these categories.  They
object to the exclusion of the remainder.

1.    *Consented-to Exclusions*

Plaintiffs seek, and Defendants consent to, the exclusion of the following categories of evidence:

- collateral source payments and benefits;

- this action's effect on higher insurance premiums;

- evidence, including expert opinions, not previously disclosed during discovery;[4]

- settlement negotiations and mediations in this action;

- that Defendants did or did not receive a citation in connection with the accident at issue in this case;

- Plaintiffs' contingent fee arrangement with their counsel;

- that any Defendant "regrets, apologizes for, or asks forgiveness for" the accident;[5]

- the verdict in the Missouri lawsuit brought by Christopher Morse;

- opinions by Defendants' expert Roberts not contained in his Janauary 26, 2011, expert report;

---

[4] Defendants reserve the right to introduce, for purposes of impeachment, evidence of Plaintiffs' criminal histories.  The Court discusses this evidence below.

[5] Defendants' counsel reserves the right to characterize the accident as regrettable.

- Randall Bowman's driving record;

- Plaintiffs' and Plaintiffs' decedent's use, or non-use, of seat belts; and

- that Plaintiffs filed their Motion *in Limine*.[6]

Because of the parties' consent, the Court grants Plaintiffs' Motion *in Limine* with respect to these categories of evidence and references.

        2.    *Bowmans' Health Problems and Bowmans' Physicians*

Plaintiffs seek to exclude evidence of the Bowmans' health issues and testimony by the Bowmans' treating physicians on the grounds that the decedents' medical conditions are not relevant and that the physicians were not disclosed as experts as required by Rule 26(a)(2).  Defendants argue the Bowmans' medical issues are relevant to Plaintiffs' wrongful death damages and to Randall Bowman's negligence.  They further argue that the Bowmans' physicians are not expert but fact witnesses.[7]

Under Georgia law, damages for wrongful death include "the full value of

---

[6] The parties agree that excluded material is required be redacted from exhibits shown to the jury.

[7] It is not clear to the Court why Plaintiffs here seek to exclude evidence regarding the Bowmans.  Plaintiffs' Motion *in Limine* appears to have been copied *verbatim* from the motion *in limine* filed by the Bowmans' estates in a related lawsuit.  To the extent Plaintiffs intended to seek the exclusion of this evidence, the Court's ruling is the same as the Court's ruling in the estates' lawsuit because the two actions will be tried together.

the life of the decedent." See O.C.G.A. § 51-4-2(a).  A decedent's medical

conditions, affecting this "value," are relevant to calculating wrongful death

damages.  See Alvista Healthcare Ctr., Inc. v. Miller, 673 S.E.2d 637, 640–41 (Ga.

Ct. App. 2009).  Testimony of the Bowmans' physicians regarding medical

conditions affecting the value of the Bowmans' lives is relevant, and the motion *in*

*limine* to exclude it is denied.

Defendants claim the physicians will testify that Randall Bowman's medical

conditions contributed to the accident by having "caused [Bowman's] failure to

take evasive action and to avoid the rear of Defendants' vehicle."  Testimony by

any physician to the effect that Bowman's medical condition contributed to the

accident is an expert causation opinion.  See Vaughn v. United States, 542 F.

Supp. 2d 1331, 1336 n.3 (S.D. Ga. 2008) (explaining that "when a treating

physician goes beyond the observations and opinions obtained by treating the

individual and expresses opinions acquired or developed in anticipation for trial,

the treating physician" is an expert and may be required to furnish an expert report

under Rule 26(a)(2)(B)).  Defendants concede that the Bowmans' physicians were

not disclosed as experts,[8] and, at least as a result of this failure to disclose, this

---

[8] Defendants assert that they plan to take the physicians' depositions and then
determine whether to designate the physicians as experts.  Under the scheduling
order governing this case, expert reports were required to be completed and filed

causation testimony is required to be excluded.  See Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").[9]

### 3.    *Reference to Plaintiffs' Failure to Call Witnesses*

Plaintiffs seek generally to preclude Defendants from referring "to the failure of Plaintiffs to call any specific witness."  Plaintiffs do not cite, and the Court is not aware of, any authority prohibiting a reference of this nature, and this request to exclude is denied.

### 4.    *Reference to "Overly Litigious" Society*

Plaintiffs seek generally to preclude Defendants from commenting to the jury that society is "overly litigious" or referring to lawsuits as "a sign of the times."  The Court defers to trial its consideration of any objections that Plaintiffs may assert to comments Plaintiffs believe are improper.

---

by January 20, 2012, and expert depositions were required to be completed by February 17, 2012.  Disclosure of an expert after January 20, 2012, is untimely.

[9] If Defendants present evidence of the Bowmans' medical conditions, the Court will give the jury a limiting instruction that the evidence is to be considered only for the purpose of valuing the decedents' lives.

5.     *Reference to Plaintiffs' Use of Damages Award or that Award Will Not Undo Damage*

Plaintiffs seek to preclude Defendants from commenting on what Plaintiffs may do with a damage award and on commenting that a monetary award will not "undo" the deaths of the Bowmans.  Defendants agree not to comment on what Plaintiffs may do with an award, and Plaintiffs' request to exclude these comments is denied as moot.  Defendants argue there is no authority holding it improper to comment generally that money will not bring a plaintiff "back."  While this kind of argument is doubtfully effective or artful, the Court denies the motion to exclude it.

6.     *Opinions of Law Enforcement Investigators*

Plaintiffs seek generally to preclude law enforcement investigators from offering "opinions regarding negligence and causation of the wreck."  Defendants respond only that "to the extent proper foundation has been made for the testimony of these individuals, they should be permitted to testify."  Plaintiffs do not identify the specific testimony they expect Defendants to introduce.  This category of evidence is too vague to allow the Court to make a pre-trial ruling, and Plaintiffs should assert, at trial, their objections to any opinions offered by investigators. The motion to exclude investigation opinions is denied.

7.     *Settlement of Claims by Third-Parties*

Plaintiffs seek to exclude Defendants from introducing evidence that

14

Plaintiffs settled claims with Bowman's employer.  Defendants argue that these settlements are relevant because Defendants have a "right of contribution" from Bowman's employer.  Defendants have not asserted a contribution claim in this action, and Plaintiffs' request to exclude evidence of third-party settlements is granted.

### 8.  *Spoliation Instruction*

Plaintiffs seek various sanctions against Defendants, including a spoliation instruction, because, Plaintiffs claim, Defendants authorized Hassan's truck to be moved from the accident site, which, Plaintiffs further claim, caused the destruction of "black box" data showing the truck's speed when the collision occurred.  As noted above, Plaintiffs' Motion *in Limine* appears to have been copied *verbatim* from the motion *in limine* filed by the Bowmans' estates in a related lawsuit.  In that lawsuit, the estates stated that they would file a motion for sanctions regarding the "black box" data, and Defendants stated that they would then fully respond.  In the absence of a motion, the spoliation issue is not properly before the Court.

### 9.  *Defendants' Rebuttal to "Side of the Road" Incident*

During the trial of a related case in Missouri, Edward Trotter, a passenger in the truck driven by Hassan when the accident occurred, testified that just prior to

the accident Hassan had pulled over to the side of the road.  Trotter's testimony was inconsistent with his previous deposition testimony in this case.  Plaintiffs seek to preclude Defendants from introducing evidence regarding this alleged "side of the road" incident.  Defendants state that they do not intend to present evidence of the "side of the road" incident, and the Court thus denies this request as moot.

> ### 10.   *Opinions of Defendants' Expert Roberts*

Plaintiffs seek to exclude the testimony of Defendants' expert Roberts for the reasons stated in their Motion to Exclude Expert.  The Court previously ruled on the scope of Roberts's testimony.  See Section II above.

> ### 11.   *Defendants' Expert Roberts's Video Reenactment*

Plaintiffs seek to exclude a video reenactment of the accident created by Roberts on the ground that the video does not account for the alleged "side of the road" incident.  Based on Hassan's testimony of the events surrounding the accident and Trotter's deposition testimony, Defendants dispute that the "side of the road" incident occurred.  They contend that Roberts's video reenactment accurately portrays their version of the events surrounding the accident.

To be admissible, an expert's reenactment of an accident generally must be "conducted under substantially similar conditions" as the accident itself.  See Burchfield v. CSX Transp., Inc., 636 F.3d 1330, 1336 (11th Cir. 2011) (quoting

Barnes v. Gen. Motors Corp., 547 F.2d 275, 277 (5th Cir. 1977)).  When specific

conditions are disputed, however, courts have held that the reenactment is

admissible but that an instruction to the jury, that the reenactment depicts only one

party's version of events, is appropriate.  See Hinkle v. City of Clarksburg, 81 F.3d

416, 425 (4th Cir. 1996).  Plaintiffs' only objection to Roberts's video is that it

does not include the disputed "side of the road" incident.  The Court finds that the

video is admissible but that a limiting instruction should be given.   The limiting

instruction is:  The video is a reenactment based on Defendants' version of events.

The parties dispute whether Hassan did or did not stop at the side of the road to

return to the road just before the accident.  You are the sole determiners of the facts

in this case and how you find the facts may impact the viability or usefulness of the

video.

> 12.    *That Plaintiffs Were Passengers in a Prison Transport Van*

Plaintiffs seek to exclude evidence of, or reference to, the fact they were

prisoners at the time of the accident and that they were passengers in a prison

transport van owned by Prison Transport Services.  Defendants do not argue that

Plaintiffs' status as prisoners is relevant; however, they argue that their defense

based on Randall Bowman's negligence requires that they present evidence that

Randall Bowman was working as a driver at the time of the collision and various

details of Randall Bowman's work schedule.

Recognizing Defendants' need to present this evidence, Plaintiffs suggest that Defendants be precluded only from presenting evidence that Bowman was operating a *prisoner* transportation van and that the employer not be identified as Prisoner Transport Services. Defendants did not oppose this suggestion, and the Court finds it reasonable. Defendants may present evidence regarding Randall Bowman's employment and that he was transporting passengers. Defendants may not show that the passengers were also prisoners. The employer may be referred to by its initials, "PTS," and all exhibits shall be redacted accordingly.

### 13. *Plaintiffs' Prior Convictions*

Plaintiffs seek to exclude evidence of their prior criminal convictions. Defendants state that they do not intend to introduce such evidence generally but that they may seek introduce evidence of convictions for purposes of impeachment. Rule 609 of the Federal Rules of Evidence allows evidence of certain criminal convictions to be introduced for the purpose of impeaching a witness. Plaintiffs do not specifically object to the use of their convictions in accordance with Rule 609. The Court finds that evidence of Plaintiffs' criminal convictions may be admitted only under Rule 609.

B.     Defendants' Motion *in Limine*

In their Motion *in Limine*, Defendants seek to preclude Plaintiffs from introducing three (3) categories of evidence: (i) Hassan's driving record; (ii) opinions by Plaintiffs' experts not contained in the experts' reports; and (iii) references to the existence of destroyed "black box" data.  Plaintiffs did not oppose, or otherwise respond to, Defendants' Motion *in Limine*, and the Court thus considers Plaintiffs to consent to the exclusion of the evidence at issue in Defendants' motion.  See LR 7.1(B) ("Failure to file a response [to a motion] shall indicate that there is no opposition to the motion.").  Defendants' Motion *in Limine* is granted.

IV.    **CONCLUSION**

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Exclude the Testimony of Defendants' Purported Expert Donald Roberts [106] is **GRANTED IN PART** and **DENIED IN PART**.  It is **GRANTED** with respect to Roberts's opinions of Hassan's truck's speed based on the average speed of Hassan's truck.  It is **DENIED** with respect to Roberts's opinions of speed based on the "delta v" data and the "distance and braking analysis."

**IT IS FURTHER ORDERED** that Plaintiffs' Motion *in Limine* [113] is

**GRANTED IN PART**, **RESERVED IN PART**, and **DENIED IN PART**.  It is

**GRANTED** with respect to the following categories of evidence and references:

- collateral source payments and benefits;

- this action's effect on higher insurance premiums;

- evidence, including expert opinions, not previously disclosed during discovery;

- settlement negotiations and mediations in this action;

- that Defendants did or did not receive a citation in connection with the accident at issue in this case;

- Plaintiffs' contingent fee arrangement with their counsel;

- that any Defendant "regrets, apologizes for, or asks forgiveness for" the accident;[10]

- the verdict in the Missouri lawsuit brought by Christopher Morse;

- opinions by Defendants' expert Roberts not contained in his Janauary 26, 2011, expert report;

- Randall Bowman's driving record;

- that Plaintiffs filed their Motion *in Limine*;

---

[10] Defendants' counsel reserves the right to characterize the accident as regrettable.

- causation opinions by the Bowmans' physicians;

- Plaintiffs' prior criminal convictions, except to the extent such evidence is admissible under Rule 609; and

- that Plaintiffs were prisoners at the time of the accident or were passengers in a "prison" transport van.

It is **DENIED** with respect to the following categories of evidence and references:

- evidence of the Bowmans' health problems, with a limiting instruction that the evidence is to be considered only for the purpose of valuing the Bowmans' lives;

- references to Plaintiffs' failure to call witnesses;

- references to Plaintiffs' use of a damage award or that a damage award will not "undo" damage;

- settlement of claims by third-parties;

- Defendants' rebuttal to the alleged "side of the road" incident; and

- Roberts's video reenactment, with a limiting instruction that the video depicts Defendants' version of events surrounding the accident.

It is **RESERVED** with respect to the following categories of evidence and

references, to which Plaintiffs are required to make their objections at trial:

- references to "overly litigious" society, and similar comments;

- opinions of law enforcement investigators; and

- spoliation instruction, based on Defendants' moving of Hassan's truck.

    **IT IS FURTHER ORDERED** that Defendants' Motion *in Limine* [112] is

**GRANTED**.

**SO ORDERED** this 20th day of November, 2013.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE