IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DOUGLAS GRIFFIN et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>NEW PRIME INC. d/b/a PRIME, INC. et al.,<br><br>　　　　Defendants. | 1:10-cv-01926-WSD |
| KATINA LEWIS et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>NEW PRIME INC. d/b/a PRIME, INC. et al.,<br><br>　　　　Defendants. | 1:10-cv-01228-WSD |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Sanctions [129] in Griffin et al. v. Prime Inc. et al., No. 1:10-cv-01926 (the "Griffin case"), and Plaintiffs' Motion for Sanctions [127] in Lewis et al. v. Prime Inc. et al., No. 1:10-cv-01228 (the "Lewis case").

## I.   BACKGROUND

### A.   Facts

#### 1.   Trotter's Testimony

In depositions taken in October 2010 and October 2011, Defendant Trotter ("Trotter") testified that (1) he was asleep in the sleeping compartment for several hours immediately preceding the accident, (2) he awoke in the moments prior to the accident, got dressed and began to move to the front of the cab, (3) as he pulled open the drapes separating the sleeper berth from the cab, he observed Defendant Hassane ("Hassane") travelling at a steady pace and maintaining the same speed, (4) operating the rig in 10th gear, and (5) he felt the collision as he was proceeding to the cab of the truck.  See the Court's Op. and Order on Defs. Mot. for Summ. J. and Pls. Mot. for Supplemental Br., at 6.

On November 26, 2012, Defendant Trotter testified at a trial in Missouri based on the same motor vehicle accident that is at issue in this action.  Id.  The Missouri action was brought by another passenger in the van that was injured.  At that trial, Trotter stated that, just before the accident, Hassane had pulled over to the shoulder of the highway and stopped so he could change driving positions with Trotter.  Id.  Trotter testified further that he had told Hassane to continue to the next interstate exit before they switched, and that Hassane proceeded to pull back

onto Interstate 20.  Id.  Trotter recalled that the collision occurred 20 or 30 seconds later.  Id.

On November 18, 2013, the Plaintiffs in this case deposed Trotter for the third time.  At that deposition, the Plaintiffs learned that Trotter was not employed at Prime before being deposed in this matter for the second time on October 12, 2011.  Pls. Ex. 7 at 43-45.  At the 2013 deposition, Trotter testified that he owed Prime Inc. $8000, and that Prime rehired him and forgave his $8000 debt shortly before he was deposed in this matter for the second time in October 2011.  Id.  Trotter stated that in July 2012, Trotter's employment at Prime was terminated.  Id. at 105.

On December 31, 2013, the Plaintiffs in the Griffin case moved for sanctions against the Defendants.  Plaintiffs argue that the Defendants' answer should be struck and a default judgment should be entered against the Defendants.  Plaintiffs claim that the alleged forgiveness of his $8000 debt when Trotter was rehired constituted a bribe for Trotter's false testimony at his second deposition in October, 2011.  On January 6, 2014, the Defendants replied to the Plaintiffs' Motion for Sanctions.  Defendants argue that there is no evidence that Prime bribed Trotter, and further argue that Trotter testified that Prime did not influence his testimony at the second deposition, which was consistent with his testimony at

his October 2010 deposition.  Trotter's testimony in October 2011 regarding the accident was consistent with the account he gave at the October 2010 deposition.

On May 28, 2013, the Plaintiffs in the <u>Lewis</u> case moved for sanctions against the Defendants.  In the <u>Lewis</u> case, the Plaintiffs also request the Court to strike the Defendants' answer and enter a default judgment against the Defendants.  They argue that Prime orchestrated a fraud on the Court because Trotter admitted in his trial testimony that Prime's lawyer, at some point, knew that Hassane had pulled over to the shoulder of the highway and stopped so he could change driving positions with Trotter.  The Plaintiffs claim further that Prime's lawyer allowed Trotter to testify falsely when Trotter was deposed in this case in 2010 and 2011.  The Plaintiffs also claim that Prime failed to produce a logbook entry documenting that Hassane pulled over to the shoulder of the highway and stopped so he could change positions with Trotter.  The Plaintiffs allege that the Defendants' failure to produce the logbook entry, or to explain the absence of the logbook entry, is evidence that Defendants' intended to conceal the truth.

The Defendants deny that Trotter was "bribed" for his testimony and deny that Prime's lawyer encouraged Trotter to testify falsely when Trotter was deposed in this case.  The Defendants suggested that Trotter changed his version of events only after Trotter was coached by a lawyer, who represented the plaintiff in the

4

Missouri action. The Defendants speculate that Trotter may have changed his version of events because Trotter wanted to file a wrongful termination suit against Prime.[1]

1. "Black Box" Data[2]

The Electronic Control Module (ECM), or the "black box" data for tractor-trailers, retains data regarding "when the last stop occurred, the vehicle's speed over a period of time, brake application, engine RPM, and whether the cruise control is on or off, among many other things." P's Mot. for Sanctions at 3. Plaintiffs allege that the Defendants intentionally destroyed the "black box" data on the tractor-trailer by knowingly moving the tractor-trailer forward after the collision.[3] The Plaintiffs also allege that Donald Lacy ("Lacy"), the director of safety at Prime, testified as an expert witness in an unrelated case and stated in that case that "the failure to [download and preserve the ECM data] constitutes

---

[1] The Court will collectively address in this Order the allegations raised in both matters.

[2] Allegations regarding the spoliation of the tractor-trailer's "black-box" data were raised only in Plaintiffs' Motion for Sanctions in Griffin et al. v. Prime Inc. et al. The Court will address the Plaintiffs' claims regarding spoliation in Section II (B) of this Order.

[3] It is undisputed that movement of the tractor-trailer after a collision causes the "black box" data to be erased.

5

spoliation of evidence." The Plaintiffs assert that Lacy was confronted with his prior testimony regarding the "black box data" at his deposition in this case, but Lacy denied that he had ever given an opinion on spoliation, and refused to answer any additional questions related to spoliation.

The Defendants respond that a tow-truck operator, with the Georgia State Patrol's consent, moved Prime's tractor-trailer forward to separate the tractor-trailer from the prison van shortly after the collision. Defendants also argue that their representatives did not arrive at the scene until after the tractor-trailer and the prison van had been separated. The Defendants thus deny that they spoliated the "black box" data because the data was already destroyed before any of their representatives arrived at the scene of the accident. With respect to Lacy's testimony, the Defendants dispute that Lacy testified falsely at his deposition in this matter, and assert that Lacy's opinion on the facts in another case is not relevant to the issues in this matter.

## II.   DISCUSSION

### A.   Legal Standard For Sanctions Regarding Trotter's Testimony

A court may impose sanctions for litigation misconduct under its inherent

power.[4]  Eagle Hospital Physicians, LLC. v. SRG Consulting, Inc., 561 F.3d 1298, 1306 (11th Cir. 2009) (citations omitted).  The court's inherent power is based on "'the court's need to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'"  Id. (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)).  The court must exercise this power "'with restraint and discretion.'"  Id. (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980)).  "'The key to unlocking a court's inherent power is a finding of bad faith.'"  Id. (quoting Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998)).  A party acts in bad faith by delaying or disrupting litigation, or hampering the enforcement of a court order.  Eagle Hospital Physicians, LLC., Inc., 561 F.3d at

---

[4] Plaintiffs rely on Rule 37(c)(1) of the Federal Rules of Civil Procedure as a basis for seeking sanctions against Defendants.  The Plaintiffs' allegations do not fall under the umbrella of sanctionable conduct pursuant to Rule 37 because the alleged misconduct did not directly violate a court order regarding discovery.  The Eleventh Circuit has repeatedly held that sanctions under Rule 37 are unavailable in the absence of a court order compelling discovery.  United States v. Certain Real Property, 126 F.3d 1314, 1316-18 (11th Cir. 1997).  Even if the sanctionable conduct does not fit squarely under Rule 37, the Court has the "inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal."  In re Amtrak "Sunset Ltd." Train Crash in Bayou Canot, AL on September 22, 1993, 136 F. Supp. 2d 1251, 1264-66 (S.D. Ala. 2001) aff'd sub nom. In re Amtrak, 29 F. App'x 575 (11th Cir. 2001) (finding that sanctions are not available under Rule 37 where defendant alleged that plaintiff provided perjured interrogatories, but concluding that the court's authority to impose sanctions falls within its "inherent power")  (citations omitted).  Here, the Court chooses to consider the Plaintiffs' allegations under its inherent authority to impose sanctions for litigation misconduct.

1306.

The dismissal of a party's answer or a sanction that results in a default judgment is a severe punishment, which should be given "only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." In re Sunshine Jr. Stores, 456 F.3d 1291, 1305-1306 (11th Cir. 2006). The district court has the inherent power to strike an answer and enter a default judgment when a party willfully obstructs the litigation process in bad faith. See Eagle Hospital Physicians, LLC., 561 F.3d at 1306-1307 (affirming the court's decision to dismiss the complaint and enter a default judgment because defendant secretly monitored the plaintiff's attorney-client communications in bad faith).

    *1.     Analysis*

At the trial held in Missouri, Trotter testified that prior to his depositions on October 27, 2010 and October 13, 2011, he had informed Prime's lawyer regarding how Hassane had pulled over to the shoulder of the highway and stopped so he could change driving positions with Trotter. See Pfs. Ex. 3, at 39-40; 46-47. Trotter also stated, however, that Prime's lawyer never instructed him to testify falsely when Trotter was deposed in this matter in 2010 and 2011. See Dfs. Ex. P. at 43. Plaintiffs claim that Prime's lawyers must have manipulated Trotter's testimony or allowed inaccurate testimony to be given in this action. The

Defendants claim that Trotter was manipulated by Plaintiffs' counsel to change his version of events. Defendants also claim that Trotter was motivated to testify falsely at the trial in Missouri because Trotter may have contemplated litigation against Prime. The parties' interpretation of Trotter's testimony is speculation and conjecture.

Trotter's testimony has been inconsistent over the course of these cases. Based on this and the ambiguity of what Trotter has said, the Court is unwilling to infer bad faith on this scant and ambiguous record. "[A] court ... should not go beyond the necessities of the situation to foreclose the merits of controversies as punishment for general misbehavior." Dorsey v. Academy, 423 F.2d 858, 860–61 (5th Cir. 1970) (citations omitted). There is a strong policy favoring a trial on the merits. See Fox v. Studebaker-Worthington, Inc., 516 F.2d 989, 996 (8th Cir.1975). Trotter's testimony is material to the claims and defenses raised in this matter, and the inferences to be drawn from Trotter's prior testimony are still the subject of dispute. Trotter's credibility and the weight to be given to his testimony can be assessed only by a jury. Without a more convincing basis for sanctions, the Court is unwilling to foreclose that a jury consider the merits of the controversies in this case. Plaintiffs have not shown that Defendants or their counsel knew any facts inconsistent with Trotter's version of events in 2010 and 2011, or that

9

Defendants and their counsel encouraged Trotter to testify falsely at his depositions in this matter.

The Court agrees with the Plaintiffs that the timing of Trotter's rehiring at Prime and the forgiveness of Trotter's debt is suspicious. Defendants have not offered an explanation for these events. Plaintiffs, however, have offered no evidence to suggest that Trotter's debt was forgiven *in exchange* for perjured testimony at his second deposition, or that Trotter was offered employment at Prime *in exchange* for perjured testimony at his second deposition. In fact, at his November 2013 deposition, Trotter admitted that Defendants' representative did not tell him what to say or how to testify when he was deposed earlier in this matter. See Defs. Ex. 7 at 144-145. The Court notes further that Trotter's October 2011, testimony was consistent with the testimony he gave a year earlier, at a time when Plaintiffs do not allege any improper influence or circumstances. There is no evidence that Trotter received a *quid pro quo* for his testimony, and Plaintiffs have simply failed to show that Trotter testified falsely because Defendants rehired him and forgave his debt.

In the absence of evidence to suggest that Defendants willfully allowed Trotter to testify falsely, Defendants' failure to produce the logbook entry, or to explain the absence of the logbook entry, regarding the tractor-trailer's location on

its own cannot support a finding of bad faith. The Court concludes that Plaintiffs' Motion for Sanctions based on facts related to Trotter's testimony is required to be denied.

B.  Legal Standard For Spoliation

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Graff v. Baja Marine Corp., 310 F. App'x 298, 301 (11th Cir. 2009). In determining whether to impose sanctions for spoliation, courts consider five factors: (1) whether the plaintiff was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the party accused of spoliation acted in bad faith; and (5) the potential for abuse if the evidence is not excluded. McLeod v. Wal-Mart Stores, Inc., 515 F. App'x 806, 808 (11th Cir. 2013). A showing of bad faith requires the plaintiff to demonstrate that a "party purposely loses or destroys relevant evidence." Walter v. Carnival Corp., No. 09–20962–CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010) (quoting Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997)).

  1.  *Analysis*

Plaintiffs do not offer any evidence to suggest that Defendants knowingly moved the tractor-trailer forward after the collision, and thereby erased the "black box" data.  Plaintiffs also do not offer any evidence to rebut the Defendants' claim that a tow-truck operator, with the Georgia State Patrol's consent, moved Prime's tractor-trailer forward to separate the tractor-trailer from the prison van shortly after the collision.  The Plaintiffs are required to demonstrate that the Defendants "purposely los[t] or destroy[ed] relevant evidence."  Walter v. Carnival Corp., No. 09–20962–CIV, 2010 WL 2927962, at *2 (quoting Bashir v. Amtrak, 119 F.3d at 931).  Here, Plaintiffs failed to show that the Defendants willfully destroyed the tractor-trailer's "black box" data.  See Connor v. Sun Trust Bank, 546 F. Supp. 2d 1360, 1376–77 (N.D. Ga. 2008) (finding bad faith because custodian "affirmatively deleted" the "most relevant e-mail" despite being told to preserve the document); Se. Mech. Servs., Inc. v. Brody, 657 F. Supp. 2d 1293, 1300–02 (M.D. Fla. 2009) (finding bad faith because forensic computer experts agreed that e-discovery was "wiped" pursuant to "deliberate and intentional actions"); Optowave Co. v. Nikitin, No. 6:05–cv–1083–Orl–22–DAB, 2006 WL 3231422, at *9–11 (M.D. Fla. Nov. 7, 2006) (finding bad faith because computer expert admitted to the intentional deletion of e-discovery).

Lacy's opinion that a failure to preserve "black box" data constitutes spoliation of evidence does not support that spoliation occurred here. Plaintiffs must show that Defendants purposely failed to preserve the "black box" data. A failure to preserve evidence, without any degree of culpability, does not constitute as spoliation of evidence. The Court also agrees with the Defendants that Lacy's opinion given in an unrelated case years ago has little to no bearing on this matter.

Plaintiffs have failed to offer any evidence to suggest that Defendants purposely lost or destroyed the tractor-trailer's "black box" data, and therefore, Plaintiffs cannot demonstrate that Defendants acted in bad faith. Because the Court finds that Plaintiffs have not shown that Defendants acted in bad faith, the Court is not required to consider the other factors to determine whether to impose spoliation sanctions. The Plaintiffs' Motion for Sanctions based on the Defendants' alleged destruction of the tractor-trailer's "black-box" data is required to be denied.

### III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Sanctions [129] in Griffin et al. v. Prime Inc. et al., No. 1:10-cv-01926 is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Sanctions [127] in

<u>Lewis et al. v. Prime Inc. et al.,</u> No. 1:10-cv-01228 is **DENIED**.

**SO ORDERED** this 13th day of January 2014.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE